UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

STEPHEN BUSHANSKY,

               Plaintiff,

        vs.

AVEDRO, INC., JONATHAN SILVERSTEIN,
DONALD J. ZURBAY, GARHENG KONG,
HONGBO LU, REZA ZADNO, and ROBERT J.
PALMISANO,

             Defendants.

------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

      Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his

complaint against defendants, alleges upon personal knowledge with respect to himself, and upon

information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations

herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

      1.     Plaintiff brings this action against Avedro, Inc. ("Avedro" or the "Company") and

the members of Avedro's Board of Directors (the "Board" or the "Individual Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule

14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which

Avedro will be acquired by Glaukos Corporation ("Glaukos") and Glaukos' wholly owned

subsidiary Atlantic Merger Sub, Inc ("Merger Sub") (the "Proposed Transaction").

2.      On August 7, 2019, Avedro and Glaukos issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 7, 2019 (the "Merger Agreement") to sell Avedro to Glaukos.  Under the terms of the Merger Agreement, each Avedro stockholder will receive a fixed exchange ratio of 0.365 shares of Glaukos common stock for each share of Avedro common stock they own (the "Merger Consideration").  Based on Glaukos stock's August 6, 2019 closing price, the Merger Consideration is valued at approximately $27.86 per share.  Upon completion of the Proposed Transaction, Glaukos shareholders will own approximately 85% of the combined company, and Avedro stockholders will own approximately 15%.

3.      On October 17, 2019, Avedro filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Avedro stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Avedro's and Glaukos' financial projections, relied upon by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim"), in its financial analyses; (ii) the inputs and assumptions underlying the financial valuation analyses that support the fairness opinion provided by Guggenheim; and (iii) Guggenheim's and Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Avedro's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because defendants are found or inhabitants or transact business in this District.  Avedro's common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Avedro.

9.      Defendant Avedro is a Delaware corporation, with its principal executive offices located at 201 Jones Road, Waltham, Massachusetts 02451.  The Company is a leading hybrid ophthalmic pharmaceutical and medical technology company focused on treating corneal disease and disorders and improving vision to reduce dependency on eyeglasses or contact lens.  Avedro's common stock trades on the NASDAQ Global Select Market under the ticker symbol "AVDR."

10.      Defendant Jonathan Silverstein ("Silverstein") has been a director of the Company since November 2015.

11.     Defendant Donald J. Zurbay ("Zurbay") has been a director of the Company since September 2017.

12.     Defendant Garheng Kong ("Kong") has been a director of the Company since 2018.

13.     Defendant Hongbo Lu ("Lu") has been a director of the Company since May 2018.

14.     Defendant Reza Zadno ("Zadno") has been Avedro's President and Chief Executive Officer ("CEO") and a director of the Company since September 2016.

15.     Defendant Robert J. Palmisano ("Palmisano") has been a director of the Company since May 2014 and Chairman of the Board since January 2019.

16.     Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## RELEVANT NON-PARTIES

17.     Glaukos is a Delaware corporation with its principal executive offices located at 229 Avenida Fabricante, San Clemente, California 92672.  Glaukos is an ophthalmic medical technology and pharmaceutical company focused on the development and commercialization of novel therapies designed to treat glaucoma, corneal disorders and retinal diseases.  Glaukos' common stock trades on the New York Stock Exchange under the ticker symbol "GKOS."

18.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Glaukos.

19.     Gil Kliman ("Kliman") was a director of the Company from November 2015 until his resignation on August 6, 2019, in connection with the Proposed Transaction.  Defendant Kliman also served as a director of Glaukos from 2007 until his resignation on August 6, 2019, in connection with the Proposed Transaction

20.     Thomas W. Burns ("Burns") was a director of the Company from July 2018 until his resignation on August 6, 2019, in connection with the Proposed Transaction.  Defendant Burns has also been CEO and a director of Glaukos since 2002.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Avedro is an ophthalmic pharmaceutical and medical device company that develops and commercializes products to treat ophthalmic disorders and conditions, primarily associated with corneal weakness.  The Company's Avedro Corneal Remodeling platform comprises KXL and Mosaic systems, which deliver ultraviolet A or UVA light, and a suite of single-use riboflavin drug formulations.

22.     Avedro's KXL system in combination with its Photrexa drug formulations, which it launched in the United States in September 2016, is the first and only minimally invasive product offering approved by the U.S. Food and Drug Administration ("FDA"), indicated for the treatment of progressive keratoconus and corneal ectasia following refractive surgery.  Additionally, the FDA granted Avedro orphan drug designations and it has orphan drug exclusivity until 2023 that covers its Photrexa formulations used with its KXL system for its approved indications.  Avedro's Mosaic system is capable of performing vision correction procedures and treating corneal ectatic disorders.

23.     Avedro has obtained a Conformité Européene ("CE") mark for its Mosaic system, which allows it to be marketed throughout the European Union.  Avedro plans to seek FDA approval for its Mosaic system and its associated drug formulations for the treatment of presbyopia as an initial targeted indication.

24.     Avedro sells its products primarily to ophthalmologists, hospitals, and ambulatory surgery centers through a direct sales force in the United States, as well as through medical device distributors internationally.

25.     Avedro completed its initial public offering ("IPO") in February 2019.  On May 9, 2019, Avedro announced its first quarter 2019 financial results.  The Company reported revenue

of $8.8 million, a 70% increase over the first quarter of 2018.  Avedro's gross margin was 74.0%

for the first quarter of 2019, as compared to 49.2% in the first quarter of 2018.  Defendant Zadno

commented on the results, stating:

> We are pleased with our first quarter performance which reflects strong customer adoption of our sight-preserving cross-linking technology, revenue growth and a solid increase in gross margin. With the recent implementation of the product-specific J Code for our Photrexa formulations, customers are now experiencing fewer drug-related reimbursement inquiries from the payors . . . .  Through investments in our commercial and reimbursement teams and pipeline of next-generation products, we are well positioned to drive meaningful top-line growth and continued margin expansion throughout 2019 and beyond.

**The Proposed Transaction**

26.　　On August 7, 2019, Avedro and Glaukos issued a joint press release announcing

the Proposed Transaction.  The press release states, in relevant part:

> SAN CLEMENTE, Calif.--Aug. 7, 2019-- Glaukos Corporation (NYSE: GKOS), an ophthalmic medical technology and pharmaceutical company focused on novel therapies for the treatment of glaucoma, corneal disorders and retinal diseases, and Avedro, Inc. (Nasdaq: AVDR), a leading hybrid ophthalmic pharmaceutical and medical technology company focused on treating corneal disease and disorders, today announced that the companies have entered into a definitive merger agreement under which Glaukos will acquire Avedro in an all-stock transaction. The transaction, which is subject to Avedro stockholder approval along with other customary closing conditions and regulatory approvals, has been approved by the board of directors of both companies and is expected to be completed in the fourth quarter of 2019.
>
> The acquisition combines two complementary, hybrid ophthalmic pharmaceutical and device organizations and establishes the cornerstone for Glaukos' new corneal health franchise, providing synergistic avenues for potential long-term growth in large, underserved markets. Glaukos plans to leverage its proven market-building expertise, global commercial scale and extensive clinical and regulatory infrastructure to maximize Avedro's disruptive bio-activated pharmaceuticals and pipeline. The transaction also expands Glaukos' R&D capabilities and is expected to strengthen multiple corneal health and vision correction development initiatives now underway across both organizations.
>
> "Avedro is an ideal fit for Glaukos' core strengths in creating and disrupting ophthalmic markets with novel therapies that address important unmet clinical needs of practitioners and patients," said Thomas Burns, Glaukos president and chief executive officer. "Avedro has in place many of the same strategic

attributes Glaukos used to pioneer MIGS, including proprietary paradigm-changing solutions, extensive clinical validation, broad reimbursement and first-to-market status. Our combined organizations can possess the essential expertise, scale and reach to maximize these opportunities, drive further commercialization of Avedro's bio-activated pharmaceuticals and establish another synergistic and durable Glaukos franchise to fuel potential near- and long-term growth and shareholder value."

Avedro's platform uses its proprietary, bio-activated, single-use Photrexa® drug formulations to strengthen corneal tissue and halt progression of keratoconus, a degenerative corneal ectatic disease that affects approximately 1.1 million eyes in the United States. Typically diagnosed in a patient's teenage years, keratoconus is characterized by progressive thinning and weakening of the cornea, resulting in vision loss. Approximately 90% of cases are bilateral and as many as 20% of patients ultimately require a corneal transplant. Conventional treatments address symptoms but the Avedro platform is the first and only FDA-approved therapy that can stop disease progression. Avedro estimates the total U.S. opportunity for its keratoconus therapy to be approximately $3 billion.

Avedro has also developed a pipeline of novel single application bio-activated topical ophthalmic pharmaceuticals for common refractive conditions, including presbyopia, low myopia and post-cataract refractive error, which are estimated to have a combined U.S. addressable opportunity of approximately $23 billion.

"Avedro is extremely pleased with the potential to become part of Glaukos, a highly-respected ophthalmic organization with a successful track record forging new markets with disruptive technologies like our keratoconus pharmaceutical therapies," said Reza Zadno, Avedro president and chief executive officer.

"Glaukos already has deep customer relationships with the majority of our target accounts, and a large, seasoned field organization that can unite with our team to accelerate awareness, adoption and utilization of our novel platform. In addition, Glaukos will bring its extensive clinical and regulatory resources to bear to help advance our promising pipeline therapies. I believe this transaction can benefit customers, employees and patients, while creating value for shareholders through ownership in a combined company with the expertise, scale and resources to drive meaningful future growth."

Key strategic and financial benefits of the transaction include:

- **Avedro fits perfectly with Glaukos' commercial organization**: Roughly 700 of Avedro target accounts are comprehensive ophthalmic practices where Glaukos maintains deep relationships. In addition, the Avedro platform can benefit from a 5-fold increase in the size of its current 17-person U.S. field sales organization.

- **Avedro can accelerate Glaukos' growth trajectory:** Avedro generated 66% year-**over**-year revenue growth in the first half of 2019. Once combined, the addition of Avedro's fast-growing product portfolio is expected to generate revenue growth acceleration for Glaukos beginning in 2020 and potential revenue synergies beginning in 2021.

- **Furthers Glaukos' hybrid strategy:** Avedro and Glaukos have similar and complementary hybrid pharmaceutical and device profiles that can combine to create a unique set of R&D, clinical, regulatory and commercial capabilities with the potential to enhance organizational success.

- **Enhances organic pipeline initiatives and R&D teams:** The combined R&D and clinical organization can provide Glaukos with scale and a unique blend of integrated expertise across ophthalmic pharmaceuticals, drug delivery, micro-scale engineering, and hardware and software development.In addition, an expanded pipeline can provide new opportunities to extend leadership positions in high-growth ophthalmic markets.

- **Provides attractive financial benefits and potential shareholder value creation:** In addition to the potential for accelerated revenue growth, Glaukos anticipates achieving annualized cost savings in excess of $15 million by 2021, primarily through reduced public company and administrative costs. As such, the company expects the transaction to be accretive to operating results and cash flow by 2021.

**Transaction Terms and Approvals**

Under the terms of the merger agreement, for each share of Avedro common stock they own, Avedro shareholders will receive an exchange ratio equivalent of 0.365 shares of Glaukos stock.

Based on the parties' volume weighted average prices ("VWAPs") for the last 60 trading days prior to August 6, 2019, the transaction represents a 42% premium for Avedro shareholders. Upon closing, Glaukos shareholders are expected to own approximately 85% of the combined company, with Avedro shareholders expected to own the remaining 15%.

The transaction is subject to customary closing conditions and regulatory approvals, including approval of the merger by stockholders of Avedro. Certain shareholders of Avedro, including OrbiMed, HealthQuest and LAV Agile, which collectively own approximately 41% of the outstanding shares of Avedro common stock, have entered into voting agreements to vote in favor of the transaction.

**The Proxy Statement Contains Material Misstatements or Omissions**

27.     Defendants filed a materially incomplete and misleading Proxy Statement with the

SEC and disseminated it to Avedro's stockholders.  The Proxy Statement misrepresents or omits

material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Avedro's and Glaukos' financial projections, relied upon by the Company's financial advisor, Guggenheim, in its financial analyses; (ii) the inputs and assumptions underlying the financial valuation analyses that support the fairness opinion provided by Guggenheim; and (iii) Guggenheim's and Company insiders' potential conflicts of interest.

***Material Omissions Concerning Avedro's and Glaukos' Financial Projections***

29.     The Proxy Statement omits material information regarding the Company's financial projections provided by Avedro's management and relied upon by Guggenheim for its analyses.

30.     For example, the Proxy Statement sets forth, "Avedro management provided Guggenheim Securities an assumed 30%-40% probability of success to commercialize Avedro pipeline products, including PiXL for refractive vision correction (e.g. presbyopia) for purposes of conducting its financial analysis (the "Avedro Probability of Success Adjusted Pipeline Projections")." Proxy Statement at 89.  Similarly, the Proxy Statement sets forth that, "Avedro management provided Guggenheim Securities probabilities of success to commercialize the Glaukos pipeline products (Supra: 50%; Infinite: 80%-90%; and MicroShunt: 80%-90%) for purposes of conducting its financial analysis (the "Glaukos Probability of Success Adjusted Base Projections Prepared by Avedro Management"). *Id.* at 91.  Additionally, the Proxy Statement sets forth that, "Avedro management provided Guggenheim Securities probabilities of success to commercialize Glaukos pipeline products (iDose: 50%-60% and iStent SA: 50%-60%) for

purposes of conducting its financial analysis (the "Glaukos Probability of Success Adjusted Pipeline Projections Prepared by Avedro Management")." *Id.*

31.     Yet, the Proxy Statement fails to disclose the Avedro Probability of Success Adjusted Pipeline Projections, the Glaukos Probability of Success Adjusted Base Projections Prepared by Avedro Management, and the Glaukos Probability of Success Adjusted Pipeline Projections Prepared by Avedro Management, prepared by Avedro management and utilized by Guggenheim in its financial analyses.

32.     Moreover, in connection with Guggenheim's *Avedro Discounted Cash Flow Analyses ("DCF")*, the Proxy Statement sets forth:

> Guggenheim Securities performed a stand-alone discounted cash flow analysis of Avedro based on projected, risk-adjusted, after-tax unlevered free cash flows (after deduction of stock-based compensation) and an estimate of the terminal/continuing value at the end of the projection horizon in two components: (i) the Avedro Base Projections (the "Avedro Base Business DCF" and (ii) the Avedro Probability of Success Adjusted Pipeline Projections (the "Avedro Probability of Success Adjusted Pipeline DCF").

> * * *

> In calculating Avedro's terminal/continuing value for purposes of its discounted cash flow analysis, Guggenheim Securities used a perpetual growth rate range of 2.0% – 3.0%. Guggenheim Securities applied a two-stage methodology to calculate the terminal value of each of the Avedro Base Business DCF and the Avedro Probability of Success Adjusted Pipeline DCF, which was discussed with Avedro's senior management. For the Avedro Base Business DCF, during the first stage of the terminal value, free cash flow growth decelerates linearly to the assumed perpetuity growth rate by 2030, and thereafter the perpetuity growth rate is applied. For the Avedro Probability of Success Adjusted Pipeline DCF, during the first stage of the terminal value, free cash flow growth decelerates linearly to the assumed perpetuity growth rate by 2034, and thereafter perpetuity growth is applied.

*Id.* at 78-79.  The Proxy Statement, however, fails to set forth: (i) the Avedro Probability of Success Adjusted Pipeline unlevered free cash flows ("UFCFs"); (ii) the Avedro Base Business UFCF for

2030; and (iii) the Avedro Probability of Success Adjusted Pipeline UFCF for 2034, utilized by

Guggenheim in its *Avedro DCF*.

33.    Further, in connection with Guggenheim's *Glaukos DCF*, the Proxy Statement sets

forth:

> Guggenheim Securities performed a stand-alone discounted cash flow analysis of
> Glaukos based on projected, risk-adjusted, after-tax unlevered free cash flows (after
> deduction of stock-based compensation) and an estimate of the terminal/continuing
> value at the end of the projection horizon in two components: (i) the Glaukos
> Probability of Success Adjusted Base Projections Prepared by Avedro Management
> (the "Glaukos Probability of Success Adjusted Base Business DCF") and (ii) the
> Glaukos Probability of Success Adjusted Pipeline Projections Prepared by Avedro
> Management (the "Glaukos Probability of Success Adjusted Pipeline DCF"). The
> discounted cash flow analysis for each component is based on projected, risk-
> adjusted, after-tax unlevered free cash flows (after deduction of stock-based
> compensation) and an estimate of the terminal/continuing value at the end of the
> projection horizon.
>
> * * *
>
> In calculating Glaukos' terminal/continuing value for purposes of its discounted
> cash flow analysis, Guggenheim Securities used a perpetual growth rate range of
> 2.0% – 3.0%. Guggenheim Securities applied a two-stage methodology to calculate
> terminal value of each of the Glaukos Probability of Success Adjusted Base
> Business DCF and the Glaukos Probability of Success Adjusted Pipeline DCF,
> which was discussed with Avedro's senior management. For each of the Glaukos
> Probability of Success Adjusted Base Business DCF and the Glaukos Probability
> of Success Adjusted Pipeline DCF, during the first stage of the terminal value, free
> cash flow growth decelerates linearly to the assumed perpetuity growth rate by
> 2035, and thereafter the perpetuity growth rate is applied.

*Id*. at 81-82.  Yet, the Proxy Statement fails to disclose: (i) the Glaukos Probability of Success

Adjusted Base Business UFCFs; (ii) the Glaukos Probability of Success Adjusted Pipeline UFCFs;

and (iii) the 2035 UFCF for each of these two projection sets, utilized by Guggenheim in its

*Glaukos DCF*.

34.     The omission of this information renders the statements in the "Certain Information Provided by the Parties" and "Opinion of Financial Advisor to Avedro" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Guggenheim's Financial Analyses***

35.     The Proxy Statement describes Guggenheim's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Guggenheim's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Avedro's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Guggenheim's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36.     With respect to Guggenheim's *Avedro DCF*, the Proxy Statement fails to disclose: (i) the Avedro Base Business UFCF for year 2030 and the Avedro Probability of Success Adjusted Pipeline UFCFs, including year 2034, utilized by Guggenheim in the analysis; (ii) the terminal values for the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 12.25% to 14.75%.

37.     With respect to Guggenheim's *Glaukos DCF*, the Proxy Statement fails to disclose: (i) the Glaukos Probability of Success Adjusted Base Business UFCFs, including for year 2035 and the Glaukos Probability of Success Adjusted Pipeline UFCFs, including for year 2035, utilized by Guggenheim in the analysis; (ii) the terminal values for Glaukos; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 9.25% to 12.25%.

38.     With respect to Guggenheim's *PF Synergized DCF*, the Proxy Statement fails to disclose: (i) the terminal values for the pro forma company; and (ii) quantification of the inputs and assumptions underlying the discount range of 9.75% to 12.25%.

39.     With respect to Guggenheim's *Avedro's and Glaukos' Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy Statement fails to disclose the individual price targets observed by Guggenheim in the analyses and the sources thereof.

40.     With respect to Guggenheim's *Precedent One-Day Stock Price Premiums* analysis, the Proxy Statement fails to disclose the individual premiums for the transactions observed by Guggenheim in the analysis.

41.     Without such undisclosed information, Avedro stockholders cannot evaluate for themselves whether the financial analyses performed by Guggenheim were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Guggenheim's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

42.     The omission of this information renders the statements in the "Opinion of Financial Advisor to Avedro" and "Certain Information Provided by the Parties" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Guggenheim's and Company Insiders' Potential Conflicts of Interest***

43.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor Guggenheim.

44.     For example, the Proxy Statement sets forth that:

During the two years prior to the rendering of its opinion, Guggenheim Securities has been engaged by Avedro to provide financial advisory and other investment banking services in connection with matters unrelated to the Merger, for which Guggenheim Securities has received customary fees. Specifically during the past two years, Guggenheim Securities acted as underwriter and co-manager in

connection with Avedro's IPO. Guggenheim Securities has not been engaged during the past two years by Glaukos to provide financial advisory or investment banking services for which Guggenheim Securities received fees. As previously disclosed to the Avedro Board, however, during the past two years, Guggenheim Securities received certain confidential information of Glaukos pursuant to a confidentiality agreement with Glaukos and presented to the Glaukos Board certain financial analyses which are unrelated to Avedro and the Merger. Guggenheim Securities may provide Avedro, Glaukos and their respective affiliates with financial advisory and investment banking services unrelated to the Merger in the future, for which services Guggenheim Securities would expect to receive compensation.

*Id*. at 85.

45.     However, the Proxy Statement fails to disclose the fees Guggenheim received from Avedro for acting as underwriter and co-manager in connection with Avedro's IPO, as well as any other services Guggenheim performed for Avedro and the compensation received in connection with such services.  The Proxy Statement further fails to identify when in the past two years Guggenheim received certain confidential information from Glaukos and presented financial analyses to the Glaukos board.

46.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47.     The Proxy Statement also omits material information concerning Company insiders' potential conflicts of interest.

48.     The Proxy Statement sets forth, "Glaukos and Avedro have commenced an integration planning process to determine the employment status of Avedro's executive officers following the Effective Time. Additional decisions regarding these individuals are expected to be made closer to, or after, the closing of the Merger."  *Id.* at 95.  Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that

occurred between Glaukos and Avedro's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Glaukos' prior proposals or indications of interest mentioned management retention with the combined company

49.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50.     The omission of this information renders the statements in the "Opinion of Financial Advisor to Avedro," "Background of the Merger," and "Interests of Certain Persons in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Avedro stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

#### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the financial projections utilized by the Company's financial advisor in connection with its financial analyses, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by Company insiders and the Company's financial advisor.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

58.     Plaintiff repeats all previous allegations as if set forth in full.

59.     The Individual Defendants acted as controlling persons of Avedro within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Avedro, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Avedro stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  October 29, 2019

WEISSLAW LLP

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*